CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

5/27/2025

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CAROLYN BRYANT-TAYLOR, ET AL.<br><br>                    *Defendants.* | CASE NO. 6:23-cr-00022<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

Defendant Carolyn Bryant-Taylor moves to disqualify attorney Robert Jenkins from representing co-defendant Josephine Okocha. Dkt. 212.[1] As discussed below, Bryant-Taylor's motion is denied because she has failed to establish that she is a former client to whom Jenkins owes various ethical obligations.

## I. BACKGROUND

1st Adult N Pediatric Healthcare ("1st Adult") was a home health agency that provided private duty nursing and personal care throughout Virginia. 1st Adult was enrolled in the Medicaid program. Dkt. 3 at 4.

In 2019, Jessica Patterson and Autumn Williams brought a qui tam action in this Court against 1st Adult for falsely billing Medicaid for services that were not provided. *United States ex rel. v. 1st Adult N Pediatric Healthcare Services, Inc.*, No. 6:19-cv-00068 (W.D. Va.) (at Dkt. 2). They asserted claims under the federal False Claims Act and Virginia Fraud Against Taxpayers Act. *Id.* at Dkt. 2. The United States and the Commonwealth of Virginia intervened in

---

[1] Co-defendant Shekita Gore moved to join the motion to disqualify. Dkt. 214. An accompanying order grants Gore's motion, but arguments raised in the disqualification motion are attributed to Bryant-Taylor throughout this Memorandum Opinion.

the case in August 2022 and filed a Complaint in Intervention shortly thereafter. *Id*. at Dkts. 23-24. On January 27, 2023, Robert Jenkins, of the law firm Bynum & Jenkins, PLLC ("Bynum & Jenkins"), entered an appearance on behalf of 1st Adult. *Id*. at Dkt. 35. On May 4, 2023, the parties notified the Court that they had settled the matter. *Id*. at Dkt. 37. (The Court refers to this as the "civil case" throughout the rest of this Memorandum Opinion.)

According to an "engagement letter" attached to Bryant-Taylor's motion to disqualify, 1st Adult entered into a representation agreement with Bynum & Jenkins for the civil case on February 20, 2020. Dkt. 212-2. The letter identified Bryant-Taylor as the "primary contact" for 1st Adult and authorized her to request the firm's legal services. *Id*. The letter explained that 1st Adult was the firm's client and that the firm did "not undertake to provide representation, through this engagement, for the individual interests of any such officer, director or employee of 1st Adult and could not later represent such person's individual interests to the extent that they may, in any way, conflict with the interests of 1st Adult." *Id*.

On November 28, 2023, a federal grand jury indicted Bryant-Taylor and eight co-defendants on charges of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1347. Dkt. 3 at 6-7. The grand jury also charged Bryant-Taylor with health care fraud, obstruction of justice, and money laundering. *Id*. at 14-17. Okocha was similarly charged with health care fraud, as well as money laundering. Dkt. 3. *Id*. at 14-15, 17-18. (A Superseding Indictment issued March 6, 2025 charges Bryant-Taylor and Okocha with the same offenses. Dkt. 207.)

According to the indictments, Bryant-Taylor served as an owner, director, president, and Chief Operating Officer of 1st Adult. *Id*. at ¶ 13. Josephine Okocha was an owner, director, vice president, and treasurer of 1st Adult. *Id*. at ¶ 14.

Okocha retained Jenkins to represent her in the criminal case. He entered a notice of appearance on November 30, 2023. Dkt. 15.

On December 1, 2023, the Court appointed attorney David Damico to represent Bryant-Taylor. Dkt. 46.

About 16 months later, on March 26, 2025, Bryant-Taylor filed a motion to disqualify Jenkins from representing Okocha. Dkt. 212. Bryant-Taylor alleges that during Jenkins' prior representation of 1st Adult, Bryant-Taylor "revealed confidential information about herself and 1st Adult and 1st Adult's legal situation to attorney Jenkins so that he could adequately represent her company in the civil litigation." *Id*. at ¶ 7. Bryant-Taylor contends that she did not sign a waiver agreeing to Jenkins' representation of Okocha. *Id*. at ¶ 12. Bryant-Taylor is now "concerned that if she goes to trial and chooses to testify in her own defense, that Attorney Jenkins, in the course of representing Josephine Okocha, may use information the Defendant had revealed to him in preparation of the civil suit for purposes of cross examination or in other ways to her detriment and in violation of attorney/client privilege." *Id*. at ¶ 13. Thus, she asks that Jenkins be disqualified so that her "rights to attorney/client confidentiality be fully protected." *Id*. at ¶ 14.

At a hearing on April 17, 2025, Bryant-Taylor testified about her interactions with Jenkins and why she is now concerned about Jenkins representing her co-defendant.

Okocha opposes the motion. Dkt. 220. She contends, among other things, that Bryant-Taylor cannot claim that an attorney-client relationship existed between herself and Jenkins because 1st Adult – *not* Bryant-Taylor – was the client in the prior civil case. *Id*. at 4-5.

## II. LEGAL STANDARDS

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The Supreme Court has recognized a presumption favoring a party's counsel of choice. *Wheat v. United States*, 486 U.S. 153, 164 (1988); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 147–48 (2006) (explaining the "root meaning" of Sixth Amendment right to counsel generally includes "the right of a defendant who does not require appointed counsel to choose who will represent him"). This presumption may be overcome "by a demonstration of actual conflict" or "by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164. This is consistent with the judiciary's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe the." *Id*. at 160. Thus, a district court must "exercise its own independent judgment as to whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996).

The bar of this Court is subject to the Virginia Rules of Professional Conduct. *See* Order In Re: Local Rule IV(B) Federal Rules of Disciplinary Enforcement (W.D. Va. Nov. 6, 1998); Order in Re: Amendment to Rule IV – Standards for Professional Conduct of Federal Rules of Disciplinary Enforcement (W.D. Va. June 16, 2016). Accordingly, these rules provide a framework for assessing alleged conflicts of interest, attorney-client privilege, and issues arising from improper representation.

### III. DISCUSSION

The most important question raised by the motion to disqualify is whether an attorney-client relationship existed between Bryant-Taylor and Jenkins during his representation of 1st Adult in the civil case.

Virginia Rule of Professional Conduct 1.9 provides, in pertinent part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

Va. R. Prof. Cond. 1.9(a). Moreover, subject to limited exceptions, an attorney owes a duty of confidentiality to a former client and cannot use information gained during the prior representation to the disadvantage of the former client. *See* Va. R. Prof. Cond. 1.6 and 1.9(c).

The Fourth Circuit has set forth the following principles for assessing the existence of an attorney-client relationship:

> The person seeking to invoke the attorney-client privilege must prove that he is a client or that he affirmatively sought to become a client. "The professional relationship ... hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." An individual's subjective belief that he is represented is not alone sufficient to create an attorney-client relationship. Rather, the putative client must show that his subjective belief that an attorney-client relationship existed was reasonable under the circumstances.

*In Re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 (4th Cir. 2005) (internal citations omitted).

Here, Bryant-Taylor was not in an attorney-client relationship with Jenkins such that she can now invoke attorney-client privilege on behalf of herself. Although she was 1st Adult's "contact person" for Jenkins during his representation of the company in the civil case, the engagement letter disclaims that she was the client. Dkt. 212-2. The letter expressly states that the business was the client and that the firm did "not undertake to provide representation, through this engagement, for the individual interests of any such officer, director or employee of 1st Adult." *Id*. This is consistent with Va. R. Prof. Cond. 1.13(a), which provides that "[a] lawyer ...

5

retained by an organization represents *the organization* acting through its duly authorized constituents." (emphasis added). At the April 17 hearing, Bryant-Taylor affirmed that she understood 1st Adult was the client in the civil case and that Jenkins had not specifically agreed to represent her as an individual. Her testimony failed to establish that she held a subjective belief that she was in an attorney-client relationship with Jenkins and that such a belief would have been reasonable under the circumstances. *In Re Grand Jury Subpoena*, 415 F.3d at 339.[2] In sum, there is no evidence that Bryant-Taylor was, in fact, Jenkins's client for the purposes of Va. R. Prof. Cond. 1.9 and principles governing an attorney's obligations to former clients. She has not demonstrated an "actual" or a "serious potential" conflict of interest between herself and Jenkins arising from his representation of her co-defendant. *Wheat*, 486 U.S. at 164.

The Court understands that Bryant-Taylor conversed with Jenkins over the phone during the civil case and that she is concerned he may use information learned in those discussions to her detriment. However, she has not presented the Court with any evidence or detailed allegations to show that she provided confidential information to Jenkins that (1) has not already been produced in discovery in the current case or (2) was not shared in group settings with other co-defendants.[3] Based on the limited record, the Court finds her position to be rather speculative

---

[2] In the *Grand Jury Subpoena* case, the Fourth Circuit rejected AOL employees' assertion that they were in an attorney-client relationship with the company's "investigating attorneys." The Court found notable the absence of evidence related to the following:
  1) Whether the investigating attorneys told the employees they represented them
  2) Whether the employees asked the investigating attorneys to represent them
  3) Whether the employees ever sought personal legal advice from the investigating attorneys
  4) Whether the investigating attorneys rendered personal legal advice

415 F.3d at 339. Moreover, the investigating attorneys informed the employees during their conversations that information shared with the attorneys could be disclosed at the company's discretion. *Id*. The Court concluded that the employees "could not have reasonably believed that the investigating attorneys represented them personally." *Id*. at 339-40. Similarly, in the instant case, there is no evidence that Jenkins told Bryant-Taylor he represented her, that she asked Jenkins to represent her, that she sought personal legal advice from him, or that he provided her with personal legal advice.

[3] In her testimony at the April 17 hearing, Bryant-Taylor acknowledged that certain co-defendants, including Josephine Okocha and Samuel Okocha, were also present at meetings with Jenkins. To the extent that she asserts attorney-client privilege somehow applies to information that she disclosed in such settings, she likely engaged in an

because it is unclear what, if any, information would be subject to attorney-client privilege. In any event, the Court need not comment further on Bryant-Taylor's assertion of attorney-client privilege because she was not in an attorney-client relationship with Jenkins.

Finally, the significant delay in bringing the motion to disqualify must be noted. Although there is a body of case law suggesting that undue delay in bringing a disqualification motion can constitute a waiver, *see, e.g., Advanced Training Group Worldwide, Inc. v. Proactive Technologies, Inc.*, 436 F.Supp.3d 870, 874-75 (E.D. Va. 2020), most of these decisions arise in the *civil* context. In one of the few criminal cases to address this issue, a district court explained that "[t]he length of delay in bringing a disqualification motion is an important consideration, but is not determinative." *United States v. Huawei Technologies Co. Ltd.*, 2020 WL 903007, at *5 (E.D.N.Y. Feb. 25, 2020). Relevant considerations include "[1] [w]hen the movant learned of the conflict; [2] whether the movant was represented by counsel during the delay; [3] why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons; and [4] whether disqualification would result in prejudice to the nonmoving party." *Id.* (citations omitted).

Here, Bryant-Taylor waited *16 months* to bring her motion to disqualify even though she could have raised her concerns far earlier. The same appointed counsel has represented her for the entirety of this case (just as Jenkins has represented Okocha since this case began in November 2023). Bryant-Taylor's testimony at the April 17 hearing established that she has long been aware of Jenkins' representation of her co-defendant and that she had "always" had a concern about a possible conflict of interest. Similarly, Bryant-Taylor's attorney informed the

---

implied waiver of the privilege. *See In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003) ("As a general rule, implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege. Such a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege." (quoting *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998)).

Court that he had raised the issue with Jenkins early in the case[4] but opted to "wait and see" if a disqualification motion was merited. He reported that it has taken a long time to review the voluminous discovery to determine what various witnesses may say and whether disqualifying another attorney on this case would be necessary. Even so, the basis for Bryant-Taylor's motion existed as early as November 2023. At this point, disqualification would cause unfair prejudice to Okocha. Trial is scheduled for September 2025 and disqualifying Jenkins could possibly result in a continuance or severance that would further delay Okocha's case.

To be clear, Bryant-Taylor's bad timing in bringing her motion is not determinative of its merits. An ethical breach should not go uncorrected even when such a delay occurs. *See, e.g.*, *United States v. Kight*, 2017 WL 4619024, at *14 n.22 (N.D. Ga. Oct. 16, 2017) (explaining that "[t]he need for upholding high ethical standards in the legal profession far outweighs the problems caused by the delay in filing the disqualification motion"). However, based on the available record, the Court does not find Jenkins breached his duties under Va. R. Prof. Cond. 1.9 or other applicable ethics rules.

## CONCLUSION

Bryant-Taylor has failed to establish that she was in an attorney-client relationship with Jenkins and cannot invoke attorney-client privilege to disqualify him. Accordingly, her motion to disqualify is **DENIED**. The Court will enter an accompanying order on this date.

Entered this  27th  day of May, 2025.

---

[4] Josephine Okocha's brief opposing the motion to disqualify alleges that during a telephone call on December 19, 2023, Jenkins and Bryant-Taylor's counsel, Damico, discussed Jenkins' prior representation of 1st Adult. Dkt. 220 at 6 n.1. Damico has not disputed this. At the hearing on April 17, 2025, Damico said that he had raised the issue with Jenkins on a prior phone call.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE